Walter E. **RIGGS,** Petitioner,

v.

**OFFICE OF PERSONNEL MANAGE-MENT, Respondent.**

**Appeal No. 35–81.**

United States Court of Appeals, Federal Circuit.

June 20, 1983.

Harold R. Bucholtz, Washington, D.C., argued for petitioner. With him on brief were Mitchell H. Stabbe and Craig N. Goodrich, Washington, D.C.

Judith Cohn, Washington, D.C., argued for respondent. With her on brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Donnie Hoover, Asst. Director, Washington, D.C.

Before FRIEDMAN, DAVIS and NICHOLS, Circuit Judges.

NICHOLS, Circuit Judge.

## Facts

Walter E. Riggs, the petitioner, a long time revenue agent of the Internal Revenue Service, applied June 29, 1979, for a disability retirement, asserting he was unable to remain on active duty because back problems had made it painful for him to sit for long periods. Favorable action would have entitled him to an annuity under 5 U.S.C. § 8345, which by subsection (b) would commence the day after he was separated from the service. He did not then separate himself, however, but remained on active duty pending confirmation by the Office of Personnel Management (OPM), respondent, that he was disabled. This confirmation, however, was refused for reasons that no longer need concern us. Mr. Riggs appealed to the Merit Systems Protection Board (MSPB) under 5 U.S.C. § 8347(d), and, after hearing, the denial by the OPM was affirmed. The further appeal to the former Court of Claims was pending and unresolved on the effective date of the Federal Courts Improvement Act, Pub.L. No. 97–164, Act of April 2, 1982, 96 Stat. 25, and was by that law transferred here. Besides substantive error in evaluating the disability claim, Mr. Riggs relied on procedural error in the refusal to reconsider on the basis of newly discovered evidence. Under date of November 2, 1982, the OPM notified Mr. Riggs it had concluded he was disabled within the meaning of the law. It appears he has now qualified for the annuity by separating from the service as the statute requires, and either is receiving the annuity, or shortly will be, needing no further prospective assistance from the MSPB or from ourselves.

## Issue

The only appeal issue not mooted is whether Mr. Riggs is entitled to receive the annuity retroactive to the date of first application. Unless he is, or legally could be, the other errors, if any, of the MSPB are not prejudicial, having been abandoned. The new determination is based on the case file and apparently reflects appreciation that the original one was erroneous as the record does not reflect any new physical examination or new deterioration in his condition. We will assume for purposes of this appeal therefore, that Mr. Riggs was disabled on his original application date and the refusal by the OPM to so hold was erroneous.

## Decision

It is convenient to consider first the issue whether Mr. Riggs was entitled to disability

annuity on the date of his application or any subsequent date while he was still on active service. Our conclusion is that he was not and the MSPB could not legally have so held. Other issues have been discussed, but the above conclusion makes it superfluous for us to address them.

### Discussion

The fatal defect in Mr. Riggs' position is that by express provision of 5 U.S.C. § 8345(b) the annuity cannot start until he separates from his civil service position. No estoppel can alter the effect that must result from his failure to meet a statutory precondition. The closest authority on the facts is *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In that case, a person otherwise eligible for "mother's insurance benefits" under the Social Security Act could actually receive the benefits only upon written application. She did not file the application because a field representative of the Social Security Administration erroneously told her she was ineligible. The issue, as here, was whether the erroneous ruling, and failure to meet the precondition because of the erroneous ruling, estopped the government from enforcing the statutory precondition. Held, it did not. The Court referred at 788 to "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." It cited numerous authorities that need not be repeated here.

In *Broad Avenue Laundry and Tailoring Co. v. United States,* 681 F.2d 746, 748 (Ct.Cl.1982), our predecessor court commented on the state in which *Schweiker v. Hansen* left the law, pointing out that it was not written to close the door on all possible estoppels. The Court of Claims allowed relief in a case not involving a statutory prerequisite to entitlement. It commented, however:

> The effort to use an official's errors to avoid compliance with an affirmative prerequisite to an entitlement, is a sure loser. A classic case in this court is *Montilla v. United States,* 198 Ct.Cl. 48, 457 F.2d 978 (1972), where the reservist claimant sought to use the alleged erroneous statement of an Army officer to obtain entitlement to military retirement pay without earning "points" by training duty as the law requires. * * *

Mr. Riggs' claim is clothed with most dignity by an estoppel theory, and if he cannot, as we conclude, prevail on that ground, there is no other that serves his purpose better.

We may add the rule of *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) that the creation of financial liabilities by Congress against the public treasury cannot be implied but must be unequivocally expressed. Such unequivocal expression cannot be found in a statutory provision establishing an unmet prerequisite to entitlement.

This really ends the matter, but we respond to petitioner's citation of a decision of the former Court of Claims as supporting his position. His reliance is mistaken, however. The case is *Ellis v. United States,* 657 F.2d 1178 (Ct.Cl.1981). Mr. Ellis, a U.S. Navy civil service fireman, retired and claimed entitlement to the annuity allowed firemen, with some other hazardous occupations, on the basis of a shortened service period. The agency allowed the annuity as claimed, but the decision was administratively reversed and Mr. Ellis was notified he would cease receiving the annuity, but could return to his employment to serve the remainder of his qualifying time. This was on the alleged ground he was not a fireman, which ground the court afterwards rejected. 610 F.2d 760, 222 Ct.Cl. 65 (1979). The later decision previously cited was after remand for determination of quantum. The Court of Claims rejected a government contention that Mr. Ellis could not recover his annuity that accrued while reemployed. The government argued that he was a constructive reemployed annuitant during that period under 5 U.S.C. § 8344. But that law does not suspend the annuity during reemployment. Rather, it allows the annuity to continue at the established rate. A deduction is to be made from the pay of the position in which reemployed, equal to the

annuity, and paid over to replenish the Civil Service Retirement and Disability Fund (Fund) from which the annuity is paid. This circular movement of funds is set up to prevent the Fund being depleted by its payments to reemployed annuitants. Section 8344 was not literally applicable to the case, but defendant argued it was constructively applicable, that is, that Mr. Ellis' combined monthly pay equitably should not exceed the total combined amounts that would have been payable to him if he had willingly become a reemployed annuitant. The court responded that the statute stemmed from a congressional purpose to discourage reemployment of annuitants and prevent depletion of the Fund in paying annuities to them. Neither purpose was served by constructive extension of the statute to a case it did not literally cover. The discouragement purpose was not effectuated if a person could become a reemployed annuitant without his knowledge or that of the employing agency. On the other hand, the Fund was not depleted. It had not been depleted during reemployment, as no annuity was paid. It would not be depleted by award of full damages for illegal nonpayment of the annuity, because judgments of the Court of Claims of this kind were paid out of an appropriation to pay such judgments, and not directly or indirectly out of the Fund.

Neither the facts of *Ellis* nor the reasoning can be used as a precedent in the very different case we have here. Mr. Ellis did not fail to perform any prerequisite to his receipt of annuity. He had left the service as § 8345(b) required. Neither that nor any other statute demanded he stay out of the service to continue receiving the annuity. To the exact contrary, § 8344 provided expressly that if reemployed, the annuity continued. The case therefore teaches nothing to modify the decisive impact of *Schweiker v. Hansen.*

### Conclusion

We conclude, that we lack authority, as did the MSPB, to allow the annuity for periods preceding separation. Accordingly, the decision of the MSPB is affirmed.

AFFIRMED.